IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION


DORINCO REINSURANCE CO.,

                Petitioner,                          Case No. 07-12622
                                                      Hon. Thomas L. Ludington
v.

ACE AMERICAN INSURANCE CO.,
ALLIANZ INSURANCE CO., ALLIED
WORLD ASSURANCE CO., ARCH
INSURANCE CO., AXIS RE LIMITED,
COMMONWEALTH INSURANCE CO.,
SWISS RE FRANKONA REINSURANCE
LIMITED, HDI INDUSTRIE VERSICHERUNG
AG, HOUSTON CASUALTY CO., LIBERTY
MUTUAL INSURANCE CO., NATIONAL
UNION FIRE INSURANCE CO., SCOR
REINSURANCE CO., SYNDICATE
HISCOX 33,SYNDICATES KLN 510 & CSL 1084,
SYNDICATE SJC 2003, AND
SYNDICATE WEL 2020,

                Respondents.
_____/


**OPINION AND ORDER GRANTING IN PART PETITIONER DORINCO'S
MOTION FOR SUMMARY JUDGMENT, DENYING RESPONDENT
HDI INDUSTRIE'S MOTION FOR SUMMARY JUDGMENT, DENYING
RESPONDENT SWISS RE FRANKONA'S MOTION TO STAY THE MOTION FOR
SUMMARY JUDGMENT PENDING DISCOVERY, DENYING RESPONDENT SWISS
RE FRANKONA'S MOTION TO EXPEDITE AS MOOT, AND DENYING WITHOUT
PREJUDICE RESPONDENT ALLIANZ'S MOTION TO DISMISS**

      Petitioner Dorinco Reinsurance Company ("Dorinco") filed a petition to initiate arbitration

of two claims with Respondents on June 20, 2007. Dorinco is a captive insurer of the Dow

Chemical Company ("Dow"). Respondents in this matter are a group of sixteen reinsurance

companies ("Reinsurers") that contracted to provide reinsurance coverage for a policy insuring Dow from November 1, 2004 to November 1, 2005. Dorinco and each Reinsurer executed an individual certificate or slip agreement to reinsure a pro rata share of a portion of the policy. Each of the Reinsurers executed or incorporated a common agreement for the policy ("general conditions") establishing the relevant provisions of the reinsurance arrangements, which also included an arbitration provision.

The policy provided approximately $1.2 billion of casualty coverage to Dow for its facilities located on the gulf coast of Texas and Louisiana. In 2005, Hurricanes Katrina and Rita caused damage to those facilities. Dow sought payment under the policy from Dorinco. Dorinco then sought reimbursement under the policy from the Reinsurers, and the instant action ensued to commence arbitration.

As a result, Dorinco made two arbitration demands to the Reinsurers. Dorinco sought a panel for the "occurrence" or claim resulting from Hurricane Katrina and a panel for the "occurrence" or claim resulting from Hurricane Rita. The common arbitration provision, relevant to all parties, provided that any dispute between Dorinco and the "Reinsurer(s)" shall be submitted to an arbitration panel consisting of an arbitrator appointed by "either party" and a third arbitrator selected by the appointed arbitrators. Dorinco believes that the Reinsurers, as a group, are required to appoint a single arbitrator to each of the two panels. The Reinsurers challenge that assertion, contending that each Reinsurer is entitled to its own arbitration panel and to appoint its own arbitrator to each panel. Dorinco filed its petition to compel the Reinsurers to appoint arbitrators to the arbitration panels, as constituted.

The matter is presently before the Court on the various motions filed by the parties. The Court held a hearing to address the motions on December 13, 2007. The Court heard Respondent Allianz Insurance Company's ("Allianz") motion to dismiss [Dkt. # 27], Petitioner Dorinco's motion for summary judgment [Dkt. # 7], Respondent HDI Industrie Versicherung AG's ("HDI Industrie")[1] motion for summary judgment [Dkt. # 22], and Respondent Swiss RE Frankona Reassurance Limited's ("Swiss RE")[2] motion to hold Dorinco's motion for summary judgment in abeyance pending discovery [Dkt. # 10].

In its motion for summary judgment, Dorinco contends the arbitration provision unambiguously provides that Dorinco and all Reinsurers are bound to resolve any claim for an "occurrence" with a single arbitration panel. Alternatively, Dorinco argues, if the arbitration provision is ambiguous, the Court should, for each occurrence direct the parties to a single panel to resolve the structure of the arbitrations with regard to consolidation.

HDI Industrie argues in its motion for summary judgment that the plain meaning of the arbitration provision leads to a contrary conclusion. HDI Industrie contends that the provision does not determine the structure of the arbitration and, thus, the Court may not order the parties to conduct a single proceeding with respect to each arbitral claim. HDI Industrie argues, to the contrary, that the Court should interpret the arbitration provision to mean that each reinsurer is entitled to an individual panel and order separate arbitration panels.

---

[1] HDI Industrie filed its motion on behalf of itself with the twelve remaining respondent reinsurers named in the petition. As such, any further mention of HDI Industrie, also includes the remaining respondents.

[2] Swiss RE contends that it was incorrectly named as "GE Frankona Reassurance Company" in the complaint. Additionally, Scor Re U.S. filed a notice of joinder to Swiss RE's motion.

After review of the briefs, the policy, the supporting certificates, and relevant legal authority, the Court will **GRANT** in part Dorinco's motion for summary judgment and **DENY** HDI Industrie's motion for summary judgment. The Court concludes that the arbitration provision is ambiguous and that, as a result, the Court is without authority to determine the parties' intentions with respect to the provision. Under *Green Tree v. Bazzle*, 539 U.S. 444 (2003), and the arbitration provision at issue here, the arbitrators possess the authority to determine the parties' intentions in agreeing to the arbitration provision. Thus, the Court will order the respondents to appoint an arbitrator to the two panels sought by Dorinco and submit the question of the structure of the arbitration to them for determination.

Swiss RE contends, in its Rule 56(f) motion, that discovery is necessary before the Court makes any substantive decision regarding Dorinco's motion for summary judgment. Swiss RE asserts that the affidavit submitted in support of Dorinco's motion for summary judgment introduces evidence of the parties intent, and industry custom and practice extraneous to the parties' written agreement. The Court agrees that consideration of materials outside of the chosen language of the parties' document invades the arbitrators' authority based on the parties' agreement. Thus, the Court will **DENY** Swiss RE's motion to hold Dorinco's motion for summary judgment in abeyance pending discovery because consideration of those materials is for the arbitrators. The Court will also **DENY** Swiss RE's motion to expedite its Rule 56(f) motion as moot.

Finally, Allianz moves to dismiss Dorinco's petition contending that the petition was not ripe because Dorinco has yet to file a proof of loss with Allianz. Counsel for Allianz and Dorinco agreed on the record at the hearing that the motion to dismiss before the Court is premature. Counsel

stipulated that the motion should be denied without prejudice and Allianz's ability to reassert the issue. As such, the Court will **DENY WITHOUT PREJUDICE** Allianz's motion to dismiss.

I

Of the $1.2 billion of coverage provided to Dow, Dorinco retained the initial layer of insurance, up to $25 million. Dow maintained a $3 million deductible per occurrence. The next $25 million was reinsured by Swiss RE via a multi-year treaty reinsurance agreement. For the remaining $1.15 billion of coverage, Dorinco arranged through Marsh & McLennan Companies, Inc., a broker, to reinsure the outstanding portion of the policy. The Dow-Dorinco policy was divided into three layers of coverage. The first layer was for losses between $50 million and $150 million, the second layer was for losses between $150 million and $800 million, and the final layer was for losses between $800 million and $1.2 billion. In total, twenty-five reinsurers agreed to reinsure at least one of the three layers of coverage. The Reinsurers named in the petition provided 97.5%[3] of the coverage for the first layer of coverage between $50 million and $150 million. Within each layer, each Reinsurer agreed to provide reinsurance coverage for a pro rata share of the entire layer.

Dorinco and eleven of the Reinsurers executed a separate Certificate of Facultative Reinsurance ("certificate"). Each certificate listed the Reinsurer, the certificate number, the relevant level of coverage, and effective date of the policy. Each certificate lists information specific to each Reinsurer's agreement with Dorinco. Along with the certificate, the parties also executed a general condition agreement, which establishes the operative terms of the reinsurance agreements. The general conditions included an arbitration provision that stated:

---

[3] There is an additional reinsurer that provided the final 2.5% of coverage within the layer. That reinsurer is not a respondent in this matter because Dorinco and the reinsurer negotiated an alternate arbitration clause.

> As a precedent to any right of action hereunder, if any dispute shall arise between the Company and the Reinsurer(s) with reference to the interpretation of this Certificate or their rights with respect to any transaction involved, whether such dispute arises before or after termination of this certificate, such dispute, upon the written request of either party, shall be submitted to three arbitrators, one to be chosen by each party, and the third by the two so chosen. If either party refuses or neglects to appoint an arbitrator within thirty days after receipt of written notice from the other party requesting to do so, the requesting party may appoint two arbitrators.
>
> *  *  *
>
> The decision in writing of any two arbitrators, when filed with the parties hereto, shall be final, and binding on both parties. Judgment may be entered upon the final decision of the arbitrators in any court having jurisdiction. Each party shall bear the expense of its own arbitrator and shall take place in the city in which the Company's Head Office is located unless some other place is mutually agreed upon by the Company and the Reinsurer(s).

Dkt. # 7-4 at 6. Along with the certificate, and general conditions, the agreement included an endorsement excluding certain events from coverage under the policy, *e.g.* terrorism, computer virus. These three documents comprised the entire agreement between Dorinco and each Reinsurer. Each agreement was executed by a representative from the respective Reinsurer. The agreements were individually executed between October and December of 2004. Five Reinsurers executed slip agreements that incorporated the provisions of the agreement, instead of executing an individual certificate and general conditions agreement.

In August and September of 2005, Hurricanes Katrina and Rita damaged Dow's gulf coast facilities. According to Allianz's counsel, Dorinco settled Dow's claims for approximately $270 million and seeks repayment of that amount from the Reinsurers. *See December 13, 2007 Hearing Transcript* at 7-8. Dorinco asserts that a claims adjustor valued the damage from each respective hurricane to exceed $50 million. As a result, Dorinco paid Dow $22 million for the damage caused by Hurricane Katrina, and $22 million for the damage caused by Hurricane Rita, per the policy. The

Reinsurers retained an independent property adjuster, MGI Loss Adjusters, Inc., which valued the loss from each hurricane at less than $50 million.

Furthermore, Allianz's counsel asserted that after Dorinco filed the instant petition, Dow sought $162 million for damage from Hurricane Katrina and $132.7 million for damage from Hurricane Rita. *Id.* Allegedly, Dorinco retained an outside adjustment team that estimated damage at $80 million and $78.8 million, respectively. *Id.* Dorinco did not retain independent counsel to prepare a coverage opinion or negotiate the claim. *Id.* Dorinco settled the claims for $157 million and $132.7 million, respectively. The Reinsurers dispute their obligation to reinsure the settlement amounts.

On March 22, 2007, Dorinco made two written arbitration demands to resolve the dispute between Dorinco and the Reinsurers. Dorinco requested that the Reinsurers collectively nominate an arbitrator to each panel. The Reinsurers resisted the arbitration demands and informed Dorinco that each was entitled to a separate arbitration proceeding. Allianz, Swiss RE, and Scor RE each asserted their belief that each was entitled to separate proceedings under the provision. The HDI Industrie reinsurers, thirteen in total, consolidated their efforts seeking an individual panel for the group. In total, the Reinsurers thus demand four panels for each dispute. Dorinco filed the instant petition.

Prior to any discovery, the parties filed the following motions: Dorinco's motion for summary judgment filed on July 26, 2007, Swiss RE's motion to hold Dorinco's summary judgment motion in abeyance pending discovery filed on August 31, 2007, HDI Industrie's motion for summary judgment filed on September 17, 2007, and Allianz's motion to dismiss filed on September 17, 2007. In support of its motion for summary judgment, Dorinco submitted an affidavit from its

in-house counsel, Gregory Smith. Dkt. # 7-1. Mr. Smith's affidavit addresses the structure of the reinsurance agreement and the events that lead to the filing of the instant petition. *Id.* In the affidavit, Smith asserts that the parties executed individual certificates due to "logistical complications." *Id. at ¶ 10.* Additionally, Smith contends that Dorinco's interpretation of the arbitration provision is supported by industry custom and practice. *Id.*

In response to that motion, HDI Industrie filed a motion for summary judgment requesting the Court to determine that the arbitration provision unambiguously mandates separate arbitration panels for each Reinsurer. In the alternative, HDI Industrie requests the Court to compel the parties to individual arbitration panels to determine the threshold question of how the arbitration should be structured.

Allianz and Swiss RE each opposed Dorinco's motion for summary judgment. In opposition, Swiss RE filed a motion to hold the motion in abeyance pending discovery pursuant to FED. R. CIV. P. 56(f). In support if its Rule 56(f) motion, Swiss RE's counsel, Scott Torpey, submitted an affidavit. Dkt. # 10-1. His affidavit explained that Swiss RE "has not yet had the opportunity to engage in any discovery to explore and test the accuracy of the factual allegations." *Id.* at ¶ 4. Moreover, Torpey contends that Swiss RE "should be permitted to examine the purported 'logistical complications' and 'custom and practice' where Dorinco and each reinsurer entered into separate agreements." *Id.* at ¶ 6. Finally, Torpey explained that Swiss RE's representative that negotiated the Dorinco contract is unavailable because he is employed by a new company and Swiss RE has been unable to gain his cooperation. *Id.*

A motion to compel arbitration is reviewed under the summary judgment standard of FED. R.CIV. P. 56(c). *Markel Int'l Ins. Co. v. Westchester Fire Ins. Co.*, 442 F.Supp. 2d 200, 202 (D.N.J. 2006) (citing *Interdigital Comm. Corp. v. Fed. Ins. Co.*, 392 F.Supp. 2d 707, 711 (E.D. Pa. 2005)); see also *Lucey v. FedEx Ground Package Systems, Inc.,* 2007 WL 3052997 (D.N.J. Oct. 18, 2007) (slip copy). A motion for summary judgment under Rule 56 presumes the absence of a genuine issue of material fact for trial and that the moving party is entitled to a judgment as a matter of law. The Court must view the evidence and draw all reasonable inferences in favor of the non-moving party and determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). "The question of whether the language of a written agreement is ambiguous is one of law; therefore, it may be resolved summarily. However, the interpretation of such language, once held to be ambiguous, is a factual issue turning on the intent of the parties. Summary judgment is then proper only when the documents in question are undisputed and reveal that no question exists as to intent." *Parrett v. American Ship Bldg. Co.,* 990 F.2d 854, 858 (6th Cir. 1993) (citations and quotations omitted).

III

A

The Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1 *et seq.*, empowers a district court to order a party to an arbitration agreement to submit to the arbitration in accordance with the terms of the agreement. 9 U.S.C. § 4. "The FAA was designed to overrule the judiciary's long-standing refusal to enforce agreements to arbitrate and to place such agreements upon the same footing as

other contracts." *Volt Information Sciences, Inc., v. Bd. of Trustees*, 489 U.S. 468, 478 (1989) (citations and quotations omitted). The FAA "requires courts to enforce privately negotiated agreements to arbitrate, like other contracts, in accordance with their terms." *Id.*

When the parties dispute the terms of the arbitration agreement, a district court is still obliged to enforce the agreement pursuant to the FAA. In support of their motions for summary judgment, Dorinco and HDI Industrie both rely, in large part, on the United States Supreme Court decision in *Green Tree Financial Corp., v. Bazzle*, 539 U.S. 444, 447 (2003).

Courts may interpret an arbitration agreement to determine its validity or applicability, but arbitrators are to interpret all other aspects of the arbitration agreement. *Id.* at 447. In *Green Tree*, the petitioners appealed the state supreme court's decision to allow the lower court to certify a class action and subsequently compel class arbitration, when the arbitration agreement did not address the question of whether the arbitrators were authorized to address class actions. *Id.* at 449. The Court recognized that "in certain limited circumstances, courts assume that the parties intended courts, not arbitrators, to decide a particular arbitration related matter . . ." *Id.* at 452 (citing *AT&T Technologies, Inc., v. Communications Workers*, 475 U.S. 643, 649 (1986)). Specifically, a court is to decide "certain gateway matters, such as whether the parties have a valid arbitration agreement at all or whether a concededly binding arbitration clause applies to a certain type of controversy." *Id.* The Court found that this "narrow exception" did not apply as the trial court had decided "neither the validity of the arbitration clause nor its applicability to the underlying dispute between the parties." *Id.* The "relevant question" was "what kind of arbitration proceeding the parties agreed to." *Id.* (emphasis omitted). Such an inquiry "concerns contract interpretation and arbitration procedures," which "[a]rbitrators are well situated to answer." *Id.* at 453. In reaching that

conclusion, the Court noted the arbitration provision's[4] "sweeping language concerning the scope of the questions committed to arbitration." *Id.*

Chief Justice Rehnquist's dissent highlighted the challenge of identifying the proper umpire to decide issues of intent. *Id.* at 455 ( Rehnquist, C.J., dissenting ). The Chief Justice reasoned that a "decision of *what* to submit to the arbitrator is a matter of contractual agreement by the parties, and the interpretation of the contract is for the court, not for the arbitrator." *Id.* at 456 (emphasis in original). The Chief Justice relied on the Court's previous reasoning in *First Options of Chicago, Inc., v. Kaplan,* 514 U.S. 938, 945 (1995), which provided:

> [G]iven the principle that a party can be forced to arbitrate only those issues it specifically has agreed to submit to arbitration, one can understand why courts might hesitate to interpret silence or ambiguity on the 'who should decide arbitrability' point as giving the arbitrators that power, for doing so might too often force unwilling parties to arbitrate a matter they reasonably would have thought a judge, not an arbitrator, would decide."

*Green Tree*, 539 U.S. at 456 ( Rehnquist, C.J., dissenting). With that in mind, ambiguity contained in the agreement between the parties as to whom the matter is to be submitted to is as "fundamental" as what is submitted. *Id.*

Despite the Chief Justice's view, the *Green Tree* decision makes clear that a court's primary purpose is to determine the validity and applicability of the arbitration provision. All other matters of interpretation are reserved for the arbitrators. Thus, where the parties dispute the provision's intent regarding the form of the arbitration, the Court may only determine whether the provision unambiguously expresses the parties' intent with respect to form. If the Court finds the parties'

---

[4]   The arbitration provision stated "[a]ll disputes, claims, or controversies arising from or relating to this contract or the relationships which result from this contract . . . shall be resolved by binding arbitration by one arbitrator selected by us with consent of you." *Id.* at 448 (emphasis omitted).

intent with respect to form ambiguous, then *Green Tree* compels the Court to yield to the arbitrators because such a determination stretches beyond the Court's authority in this context.

Dorinco contends that the arbitration provision unambiguously provides for a single arbitration panel for each occurrence. Dorinco emphasized that the general conditions, applicable to all Reinsurers, uses the term "Reinsurer" in both singular and plural forms throughout the agreement. Thus, it contends that the provisions that refer to a Reinsurer bind only that specific Reinsurer, while the provisions that refer to Reinsurer(s) address all Reinsurers.

Additionally, Dorinco contends that the procedure set forth in the provision indicates that the Reinsurers were considered a single party. The procedure contemplated a written demand by "either party" and that "each party" would nominate an arbitrator to the panel. Dorinco reasons that the Reinsurers, as a group, are considered a "party" because each has common and aligned interests in the event of a dispute.

HDI Industrie asserts that the arbitration provision viewed in the context of multiple certificates unambiguously provides that only the individual signatory to the certificate is bound to the arbitration provision. HDI Industrie believes that the grammatical structure of the sentences using "Reinsurer(s)" indicates that the term is intended as a contingency if multiple Reinsurers are signatories to an individual certificate. At the very least, HDI contends that the arbitration provision does not address consolidated arbitration proceedings.

Allianz contends that the provision only refers to the signatory to the individual certificate. Allianz highlights multiple references to "this certificate" and the fact that Allianz was the only signatory to the individual certificate. Swiss RE similarly interprets the arbitration provision and

asserts that the language of the provision contained in separate certificates supports the interpretation that the provision only binds the signatory of the certificate to the arbitration proceedings.

In support of its position, Swiss RE emphasizes that the certificates and the slip agreements support its interpretation of the arbitration provision. First, Swiss RE contends that the Reinsurers signed the certificates and the slip agreements on different dates, which indicates that the parties viewed each certificate to stand alone. Second, the parties included a provision entitled "Several Liability Notice," which provides that each Reinsurer is "severable" and "limited solely to the extent of their individual subscriptions [and] . . . not responsible for the subscription of any co-subscribing reinsurer." Dkt. # 33-5. Again, Swiss RE asserts the inclusion of this provision supports its belief that the parties intended each certificate as separate from the others.

Upon review of the individual certificates and the associated general conditions, the Court concludes that the arbitration provision is ambiguous in addressing each Reinsurer's putative right to separate arbitration proceedings. The text of the provision simply does not clearly indicate, one way or another, whether it addresses the signatory of the individual certificate or all reinsurers to the policy as a whole. The provision applies to a dispute between Dorinco and the "Reinsurer(s)." The plural form of Reinsurer, contained in the parentheses, reasonably supports both interpretations. On the one hand, it demonstrates that the parties intended to bind all reinsurers to a single arbitration because each reinsurer signed a certificate subject to the identical arbitration provision and concerned the same policy. It can equally be interpreted as binding only the signatory that agreed to the individual certificate.

As Dorinco emphasizes, different provisions of the general conditions relate to the "Reinsurer(s)," while other provisions concern "the Reinsurer." This indicates that the term

"Reinsurer(s)," when used throughout the agreement, was intended to bind all reinsurers as a group to the overall certificate. HDI Industrie's contention that the grammatical structure surrounding "Reinsurer(s)" indicates that the provision applied to a signatory or signatories of an individual certificates, however, is reasonable.

Moreover, the procedures outlined in the arbitration provision contemplates actions of "either party" and "both parties," without ever defining the term "party" as pertaining to the signatory or all Reinsurers. Moreover, the absence of a mechanism for multiple reinsurers to determine the single arbitrator to appoint to a single panel in the arbitration provision supports the contention that the provision only relates to the individual Reinsurer.

Finally, the fact that Dorinco and the Reinsurers executed individual certificates does not persuade the Court that the parties intended each certificate to be separate and distinct from each other. Though the certificates and slip agreements were executed on different dates and contain some subtle differences, the certificates were clearly part and parcel of the reinsurance arrangements for a single reinsurance policy, executed with common general conditions. As such, the Court is unconvinced that these differences in slight terms or time of execution unambiguously reflects the intent of the parties to express their interests "separately." The Court concludes that the arbitration provision is ambiguous and does not clearly address whether all Reinsurers are bound to a single arbitration proceeding or that it entitles each Reinsurer to its selection of an arbitrator and its own arbitration proceeding. *Green Tree* directs that the ambiguity be resolved in arbitration and not by this Court.

A district court may order a continuance pending the completion of discovery if a party adequately demonstrates through an affidavit that it "cannot obtain facts essential to justify its position." FED. R. CIV. P. 56(f). A district court must evaluate the justification offered by the party when considering a rule 56(f) motion, "[i]t is not an abuse of discretion for the district court to deny the discovery request when the party 'makes only general and conclusory statements [in its affidavit] regarding the need for more discovery and does not show how an extension of time would have allowed information related to the truth or falsity of the [document] to be discovered." *Short v. Oaks Correctional Facility*, 129 Fed. Appx. 278, 281 (6th Cir. 2005) (quoting *Ironside v. Simi Valley Hosp.*, 188 F.3d 350, 354 (6th Cir.1999). It is also not an abuse of discretion to reject a Rule 56(f) affidavit as insufficient to support further discovery when the affidavit lacks "any details" or "specificity." *Short*, 129 Fed. Appx. at 354 (quoting *Emmons v. McLaughlin*, 874 F.2d 351, 357 (6th Cir.1989).

This Court agrees with Dorinco and HDI Industrie's assertion that the arbitration panel or panels must determine the intent of the provision. Swiss RE filed its Rule 56(f) motion due to a concern that the Court may interpret the arbitration provision after considering extrinsic evidence offered in support of Dorinco's motion for summary judgment. Specifically, Dorinco submitted an affidavit by its counsel in support of its motion that contended Dorinco and the Reinsurers intended to be bound to a consolidated arbitration proceeding, despite the individual certificates. The affidavit asserts that the parties executed separate certificates and slip agreements due to "logistical complications." The affidavit also suggests that this interpretation of the provision is consistent with industry custom and practice. It should be emphasized that these considerations can be given

attention by the arbitrator.  In its response to Swiss RE's Rule 56(f) motion, Dorinco asserted that the Court may consider the affidavit because Swiss RE failed to offer an affidavit creating a triable issue of fact.

The Court concludes that discovery is unnecessary in this instance.  Under *Green Tree*, the Court is obligated to facially examine the arbitration provision to ascertain whether a valid arbitration provision exists.  Provided that an agreement to arbitrate exists, the Court is to defer to the arbitrator to consider issues other than "gateway matters."  Any questions concerning interpretation of ambiguous terms is an issue for the arbitrator.  Court ordered discovery into the parties' intent or circumstances surrounding the agreement would intrude upon the arbitrators' domain.  Thus, the Court will deny Swiss RE's Rule 56(f) motion.[5]

Swiss RE also contemporaneously filed a motion to expedite its Rule 56(f) motion contending that the Court either decide the Rule 56(f) motion or allow it more time to substantively respond to Dorinco's motion for summary judgment.  On October 15, 2007, Swiss RE filed a substantive response brief to Dorinco's motion.  Thus, the Court will deny Swiss RE's motion to expedite as moot.

## C

Dorinco and HDI Industrie each moved for summary judgment seeking alternative relief. Dorinco argues that the Court has the authority to order the parties to submit the consolidation issue to two panels, one for each occurence.  HDI Industrie seeks an order directing the question to eight panels.

---

[5]  Swiss RE's counsel asserted at the hearing that its Rule 56(f) motion was moot if the Court did not consider evidence outside of the agreement.  December 13, 2007 Hearing Transcript at 29:14-25.

The Reinsurers believe the issue is resolved in their favor in the Sixth Circuit because, in a case decided before *Green Tree*, the Court held that "a district court is without power to consolidate arbitration proceedings, over the objection of a party to the arbitration agreement, when the agreement is silent regarding consolidation." *American Centennial Ins. Co. v. National Cas. Co.*, 951 F.2d 107, 108 (6th Cir. 1991). In *American Centennial*, the petitioner and respondents were parties to "numerous reinsurance agreements, each of which contain[ed] an arbitration clause." *Id.* at 107. As a result of a dispute, the parties asserted "various demands and cross demands for arbitration." *Id.* The Sixth Circuit reasoned that a court is without authority to order the parties to submit to a consolidated arbitration when the arbitration provision is silent on the issue because district courts are to direct parties "to proceed to arbitration in accordance with the terms of the agreement." *Id.* (quoting *American Centennial Ins. Co. v. National Cas. Co.*, 761 F.Supp. 472 (N.D. Ohio 1991); see also 9 U.S.C. § 4.

Dorinco argues that *Green Tree* " . . . represents a change in the law since *American Centennial* was decided." Dkt. # 60 at 10. That may be true, but on the facts of our case they may be read consistently. Dorinco proceeds to explain that *Green Tree* directs that "this Court should not presume that the parties did not intend to provide for joint or consolidated arbitration simply because the arbitration clause is silent on the point; instead, the Court is required to leave questions of ambiguous or silent contractual provisions to the arbitrator to resolve." *Id.* at 12. Indeed, the Court reads *Green Tree* and *American Centennial* to consistently reach that conclusion. Arbitrators should resolve the structure of the arbitration. The more narrow question we are presented with is the role of the Court, if any, to assure that arbitrators do resolve the question of the structure of the arbitration.

Dorinco relies extensively on *Markel Int'l Ins. Co. v. Westchester Fire Ins. Co.*, 442 F.Supp. 2d 200 (D.N.J. 2006). In *Markel*, petitioners were two reinsurers that sought to compel separate arbitration proceedings with respondent, after respondent filed a single arbitration demand. *Id.* at 201-02. The parties had executed "multi-layered" reinsurance contracts with different terms of years, but contained "substantially similar arbitration clauses" that were silent on the issue of consolidation. *Id.* at 201. While the *Markel* Court acknowledged that *Green Tree* addressed class certification as opposed to consolidation, it determined, as has this Court, that arbitrators should resolve the issue because it was "not a gateway matter of determining whether arbitration is appropriate." *Id.* at 203; see also *Blimpie Int'l Inc. v. Blimpie of the Keys*, 371 F.Supp. 2d 469, 473 (S.D.N.Y. 2005) (also finding that the issue of consolidation is not a gateway matter for the court to decide). As a result, the *Markel* Court found that it was without authority under *Green Tree* to determine the "appropriate scope of the arbitration." *Id.* at 204.

The Court, however, went on to conclude that "principles of efficiency strongly favor a single arbitration panel's determination" to address the threshold question because parties may use multiple panels for strategic purposes and to frustrate the resolution of the dispute. *Id.* As a result, the Court granted defendant Westchester's cross motion to commence arbitration proceedings under their single arbitration demand and denied the reinsurers motion to invoke separate proceedings. *Id.* at 205-06.

The jurisprudential difficulty of entertaining consideration of "principals of efficiency" to resolve the question is that it involves the Court, and not arbitrators, in the interpretation of the arbitration provision. "Principals of efficiency" may well be considered by the arbitrators in this

case, as those principals were arguably written into the arbitration provision,[6] but *Green Tree* sought to remove courts from involvement with those issues. The Reinsurers, however, invite the Court to the very same exercise in suggesting that the arbitration provision should be 'interpreted' to require separate arbitrations to determine the question of consolidation.

The problem presented is that if more than a single panel of arbitrators per occurrence is appointed and any one panel decides that separate panels are warranted, a consolidated panel is necessarily precluded. The principal at stake is not just one of efficiency, but one of preserving the arbitrators' ability to actually decide the question. As the Court in *Employers Ins. Co. of Wausau v. Century Indem. Co.*, 2005 WL 2100977 (W.D. Wis. 2005), observed when faced with the impasse in the selection of arbitration panels, the court had "no one to whom the Court can refer the consolidation dispute [to] arbitration." *Id.* at *2. Ordering the parties, in this instance, to submit the question of the structure of the arbitration to the arbitration panels demanded by Dorinco advances the principal emphasized in *Green Tree* that it is arbitrators that should determine the structure of the parties' arbitration absent clear guidance in the parties' contract. Thus, the Court will grant Dorinco's motion for summary judgment, deny HDI Industrie's motion for summary judgment, and order the parties to submit the issue of consolidation to the arbitration panels demanded by Dorinco.

D

Lastly, the Court will dismiss Allianz's motion to dismiss without prejudice. At the December 13, 2007 hearing, counsel for Allianz and Dorinco asserted that the motion may be

---

[6] The arbitration provision provides that "[t]he arbitrators shall interpret this Cerificate as an honorable engagement and not as merely a legal obligation. They are relieved of all judicial formalities and may abstain from following the strict rules of law. They shall make their award with a view to effecting the general purpose of this Certificate in a reasonable manner rather than un accordance with a literal interpretation of the language." Dkt. # 7-4 at 6.

premature. Counsel agreed that the most efficient course of action would be for the Court to deny the motion without prejudice. As such, the Court will not address the merits of the motion to dismiss, and will deny it without prejudice, per the parties' request.

IV

Accordingly, it is **ORDERED** that Petitioner Dorinco Reinsurance Company's motion for summary judgment [dkt. # 7] is **GRANTED** in part. Respondents in this matter are to collectively select a single arbitrator to appoint to each of the demanded panels to determine the sole issue of consolidation **on or before Friday February 22, 2008**.

It is further **ORDERED** that Respondent HDI Industrie Versicherung AG's cross motion for summary judgment [dkt. # 22] is **DENIED**.

It is further **ORDERED** that Respondent Swiss RE Frankona Reinsurance Limited's motion to hold petitioner's summary judgment motion in abeyance pending discovery [dkt. # 10] is **DENIED**.

It is further **ORDERED** that Respondent Swiss RE Frankona Reinsurance Limited's motion to expedite [dkt. # 11] is **DENIED** as moot.

It is further **ORDERED** that Respondent Allianz Insurance Company's motion to dismiss, and in the alternative, motion for declaratory relief [dkt. # 27] is **DENIED WITHOUT PREJUDICE**.

s/Thomas L. Ludington
THOMAS L. LUDINGTON
United States District Judge

Dated: January 23, 2008

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on January 23, 2008.

s/Tracy A. Jacobs
TRACY A. JACOBS